COURT OF APPEALS
DECISION
DATED AND FILED

January 24, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1183**

Cir. Ct. No. **2022CV556**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

CITY OF SHEBOYGAN FALLS,

PLAINTIFF-RESPONDENT,

V.

WESLEY SCOT MELTON,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Sheboygan County: DANIEL J. BOROWSKI, Judge. *Affirmed.*

¶1 GROGAN, J.[1] Wesley Scot Melton, pro se, appeals from a circuit court order affirming the municipal court's decision finding him guilty of failing

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

to stop for a school bus contrary to WIS. STAT. § 346.48.  Melton contends there was insufficient evidence to find him guilty and requests dismissal of his citation. This court affirms.

## I.  BACKGROUND

¶2      In March 2022, Melton received a traffic citation for passing a school bus that had its stop sign extended and red lights flashing.  The citation was based on the school bus driver's report to the police of the incident.  Melton disputed the citation and proceeded to trial before the municipal court.

¶3      At the trial, the school bus driver and police officer who issued the citation testified on behalf of the City of Sheboygan Falls, while Melton testified on his own behalf.  The bus driver testified that he has been a school bus driver for twenty-one years and was dropping children off after school on a road with multiple stops.  He also explained how the school bus lights and the stop sign arm work and testified that he flips a switch inside the bus that illuminates the yellow flashing lights.[2]  When he stops the bus and opens the door, the yellow lights automatically switch to red, and the stop sign extends out at the same time.

¶4      According to the bus driver's testimony, he had stopped the bus and let children off at a particular stop before Melton passed the bus.  When the bus driver resumed motion and proceeded to the next stop, he flipped the switch to immediately reactivate the yellow lights because the distance between the two stops was minimal.  Because the two stops were located in such close proximity,

---

[2] WISCONSIN STAT. § 346.48 refers to a bus's "amber warning lights."  This opinion uses "amber" and "yellow" interchangeably.

2

the bus was purportedly traveling at approximately ten to fifteen miles per hour, even though it is undisputed that the posted speed limit was thirty-five miles per hour.

¶5     The bus driver was not sure precisely how many feet the bus traveled with the yellow lights activated before stopping at the second stop; however, he testified that while stopped at the second stop with the stop sign out— which also meant the red lights were flashing—he saw a car, later identified as Melton's, passing the bus on the left.  The car did not stop but instead sped away. The bus driver took a photograph of the passing car, honked the bus's horn, and reported the incident to the police.  The bus driver testified that other cars had stopped behind the bus and that he believed the passing car should have had time to stop as well.  The photograph, which was marked and referred to as Exhibit 3 during testimony, shows the stop sign fully extended and the red light on the stop sign illuminated.  The photograph also shows Melton's car in the process of passing the stop sign.

¶6     The police officer who issued Melton's citation testified that based on the bus driver's statement and the photograph, she was able to identify Melton as the driver of the passing car and that when contacted, Melton admitted he was the driver of the car but claimed he did not see the stop sign go out and therefore did not have time to stop.

¶7     Melton represented himself at trial and testified that he did not see any yellow or red lights until he was already in the process of passing the bus.  On cross-examination, he testified that the yellow lights may have begun flashing right at the moment he began passing the bus but that he nevertheless believed he could lawfully pass the bus at that time because it was purportedly traveling at less

than half of the posted speed limit. He cited to WIS. STAT. § 346.09(3)[3] in support of his argument and asserted that because he did not see the stop sign and red lights until he was passing the bus, it would have been unsafe for him to stop considering that he was in the lane for oncoming traffic. Melton also testified that the bus driver's failure to illuminate the yellow lights 300 feet before stopping meant he should not receive a citation for passing the bus.[4]

¶8    At the conclusion of the trial, the municipal court found the City had established by clear, satisfactory, and convincing evidence that Melton unlawfully passed the school bus. Melton appealed that decision to the circuit court and received a record review (rather than a de novo trial). The circuit court

---

[3] WISCONSIN STAT. § 346.09(3) provides:

> (a) Except as provided in par. (b), the operator of a vehicle shall not drive on the left side of the center of a roadway on any portion thereof which has been designated a no-passing zone, either by signs or by a yellow unbroken line on the pavement on the right-hand side of and adjacent to the center line of the roadway, provided such signs or lines would be clearly visible to an ordinarily observant person.

> (b) The operator of a vehicle may drive on the left side of the center of a roadway on any portion thereof which has been designated a no-passing zone, as described in par. (a), to overtake and pass, with care, any vehicle, except an implement of husbandry or agricultural commercial motor vehicle, traveling at a speed less than half of the applicable speed limit at the place of passing.

[4] Melton repeatedly references WIS. STAT. § 346.48(2)(a)2.a's requirement that school buses "[a]ctuate the flashing amber warning lights at least 300 feet before stopping in a 45 miles per hour or greater speed zone[.]" It is undisputed that the posted speed limit in the location in question was thirty-five miles per hour, and accordingly, the 300-foot requirement does not apply. This opinion therefore will not further address Melton's arguments as to the 300-foot requirement and will instead limit its discussion to § 346.48(2)(a)2.a's 100-foot requirement that is applicable in thirty-five miles per hour speed zones.

4

determined that the evidence supported the municipal court's decision and affirmed the municipal court. Melton appeals.

## II.  DISCUSSION

¶9      This court applies the same standard of review as the circuit court in reviewing the municipal court's decision. *Village of Williams Bay v. Metzl*, 124 Wis. 2d 356, 361-62, 369 N.W.2d 186 (Ct. App. 1985).  Review on appeal is limited "to an examination of the transcript to determine whether the evidence supports the municipal court decision."  *Id.* at 361; WIS. STAT. § 800.14(5) (appellate review limited to an examination of the transcript and the Record).  This court reviews the municipal court's decision; it does not review the circuit court's decision. *See Village of Williams Bay*, 124 Wis. 2d at 361.[5]

¶10     Melton was convicted of violating WIS. STAT. § 346.48(1).  This statute provides, as material:

> The operator of a vehicle which approaches from the front or rear any school bus which has stopped on a street or highway … when it is displaying flashing red warning lights, shall stop the vehicle not less than 20 feet from the bus and shall remain stopped until the bus resumes motion or the operator extinguishes the flashing red warning lights.

As applicable here, § 346.48(2)(a)2.a requires bus drivers to activate the yellow lights 100 feet prior to stopping where the speed limit is less than forty-five miles per hour.  *See id.*  Here, it is undisputed that the speed limit was thirty-five miles per hour.

---

[5] Because this court reviews the municipal court's decision, any errors in the circuit court's decision are not germane to this court's review.

¶11    To establish that Melton violated WIS. STAT. § 346.48(1), the City was required to prove by clear, satisfactory, and convincing evidence that Melton: (1) approached the school bus from the front or rear; (2) while the bus had stopped on a street or highway; (3) when the bus's red lights were flashing; and (4) failed to stop his car more than twenty feet from the bus and failed to remain stopped until the bus resumed motion or extinguished the flashing lights.

¶12    The Record in this case includes an audio recording of the bench trial; there is no written transcript.  Having reviewed the Record and listened to the audio recording in its entirety, this court concludes that sufficient evidence in the Record supports the municipal court's decision.

¶13    The bus driver explained how the bus's yellow and red lights work and when the stop sign extends outward, explained that the bus was traveling at a slow speed due to the short distance between two stops, and testified that Melton's car passed the bus on the left side while the red lights were flashing and while the bus's stop sign was extended.  Taken together, the bus driver's testimony and the photograph of Melton's vehicle passing the bus while the lights were flashing and while the stop sign was clearly extended provide sufficient evidence to support the municipal court's decision.  The fact that Melton offered contradictory testimony at trial does not alter the outcome.  The municipal court, not the appellate court, assesses witness credibility, and based on its decision, the municipal court clearly found the bus driver's testimony more credible than Melton's testimony.  *See Lang v. Lowe*, 2012 WI App 94, ¶16, 344 Wis. 2d 49, 820 N.W.2d 494.  Accordingly, the municipal court did not err.

¶14    For the sake of completeness, this court responds to several of Melton's complaints.  First, Melton argues he could not be found guilty because

had he stopped for the bus's stop sign and red flashing lights, he would have had to stop in the lane reserved for oncoming traffic. This, he says, "would have violated Wisconsin Statutes and created [a] public danger." Melton, however, was only passing in the oncoming traffic lane precisely because there *was* no oncoming traffic in it at the time he began to pass the school bus, and even if cars had approached in the oncoming traffic lane while the bus remained stopped, those drivers, too, were obligated to stop for the school bus.[6] Melton's claim that it would have been unsafe for him to stop is therefore unpersuasive.

¶15    Second, Melton makes much of the fact that the bus driver said it was "impossible" for him to actuate his yellow lights for 300 feet before stopping. The bus driver said that in this circumstance—where there was such a short distance between the two bus stops—it was not possible to have the yellow lights on for that distance. Moreover, the bus was required to light the amber lights for only 100 feet because the speed limit was under forty-five miles per hour. *See* WIS. STAT. § 346.48(2)(a)2.a. And, even assuming the bus driver failed to comply with that requirement for whatever reason, any such failure on the bus driver's part does not absolve Melton from complying with § 346.48(1)'s requirement that he stop his vehicle when the bus's red lights were flashing. *See id.* Stated otherwise, the requirement that a bus driver actuate the bus's flashing yellow lights for a specific distance prior to stopping is not a condition precedent to other drivers stopping for the school bus when its red lights are flashing—the driver must stop regardless.

---

[6] It goes without saying that, should that circumstance have arisen, Melton could have returned to his lane of traffic once the bus concluded its drop-off and resumed motion.

¶16    Third, Melton complains that the photograph, Exhibit 3, does not show exactly *when* the stop sign was extended or *when* the red lights began flashing. True enough. Nevertheless, the photograph shows the stop sign fully extended—not in the process of extending—and it also shows the red light illuminated on the stop sign, indicating, based on the bus driver's testimony, that the bus was in a fully stopped position. At the same time, it shows Melton's car had not yet fully passed the stop sign. School buses are long vehicles, and the stop sign is located near the front. It is therefore logical to conclude that Melton should have seen the stop sign extending and had time to stop instead of speeding past it. Moreover, the bus driver had sufficient time to take the picture showing Melton's location relative to the fully extended stop sign, which further suggests there was adequate time for Melton to stop.

¶17    Finally, Melton's contention that he could lawfully pass the school bus here because it was purportedly driving at a speed less than half the posted limit is unpersuasive. Although WIS. STAT. § 346.09(3)(b) does provide that a driver *may* pass certain vehicles in a no-passing zone if that vehicle is "traveling at a speed less than half of the applicable speed limit at the place of passing[,]" WIS. STAT. § 346.48(1), in comparison, is mandatory in that it *requires* drivers to stop for a school bus with its red lights flashing. Thus, even assuming (without deciding) that Melton could have otherwise legally passed a school bus at the location where he passed the school bus here, his ability to do so legally dissipated upon the school bus actuating its red lights. *See, e.g.*, ***Gottsacker Real Est. Co., Inc. v. DOT***, 121 Wis. 2d 264, 269, 359 N.W.2d 164 (Ct. App. 1984) (when

statutes "relat[ing] to the same subject matter" are in conflict, the "specific statute controls over the general statute").[7]

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] Here, the statutes at issue—WIS. STAT. § 346.48(1) and WIS. STAT. § 346.09—both pertain to the "Rules of the Road." Thus, the mandatory statute requiring Melton to stop for a school bus with flashing red lights (§ 346.48(1)) controls over the permissive statute (§ 346.09(3)(b)) that otherwise may have applied. *See **Gottsacker Real Est. Co., Inc. v. DOT***, 121 Wis. 2d 264, 269, 359 N.W.2d 164 (Ct. App. 1984).